OPINION
{¶ 1} Plaintiff-appellant, Judy Casey Wanamaker, executrix of the estate of Arthur B. Casey, deceased, and trustee of the Arthur B. Casey Revocable Trust, appeals the decision of the Greene County Court of Common Pleas, Civil Division (the "trial court"), granting summary judgment in favor of defendant-appellee, G. Jack Davis, Jr.[1], in a legal malpractice action.
 {¶ 2} Arthur B. Casey died in April 1998. He left a will naming appellant (his daughter) as *Page 2 
the executrix of the estate. Prior to his death, Mr. Casey established a trust, The Arthur B. Casey Revocable Trust (the "Trust"). Appellant became the trustee of the Trust upon Mr. Casey's death. The Trust is the sole beneficiary of the will. Following Mr. Casey's death, appellant, in her capacity as executrix, retained attorney G. Jack Davis, Jr. (defendant-appellee) to handle the administration of the estate.
 {¶ 3} The estate was in excess of $650,000. In September 2002, four years after Mr. Casey's death, Davis prepared a federal estate tax return. He calculated the tax to be $240,000. On September 13, 2002, appellant went to Davis' office, signed the estate tax return, and gave him a $240,000 check payable to the Internal Revenue Service ("IRS"). According to Davis, the check was paper clipped to the return, which in turn was mailed to the IRS either that evening or the next morning.
 {¶ 4} However, a year later, appellant received a letter from the IRS notifying her that the federal estate tax was instead $280,000 and assessing a penalty of $70,229.01 and $141,290.53 in interest for failure to timely file and pay the federal estate tax. Apparently, the federal estate tax return was filed, without payment, on July 28, 2003 (ten months after appellant signed the return and gave Davis the $240,000 check). The IRS had no record of any extensions being filed. Upon receiving the letter from the IRS, appellant immediately notified Davis of the assessment. Davis (by then a common pleas judge since January 2003) referred an attorney to appellant to handle the IRS assessment.
 {¶ 5} The estate closed on October 3, 2003. On August 20, 2004, appellant filed a legal malpractice complaint in the trial court against Davis. Appellant filed the complaint both as the executrix of the estate and the trustee of the Trust. With regard to the estate, the complaint alleged malpractice in connection with the federal estate tax and the estate's federal and state income taxes. With regard to the Trust, the complaint alleged malpractice in connection with the Trust's federal and state income taxes. In his answer, Davis denied the allegations of legal malpractice regarding the estate and the Trust, and presented the affirmative defenses of statute of limitations and real party in interest. *Page 3 
 {¶ 6} On November 15, 2004, the Greene County Court of Common Pleas, Probate Division, ordered "the Estate of Arthur B. Casey * * * reopened and Letters of Authority as Executrix are ordered to be issued to Judy Casey Wanamaker forthwith, Nunc pro Tunc dating to the original appointment of May 29, 1998."
 {¶ 7} Davis subsequently moved the trial court for summary judgment on the grounds that (1) appellant's legal malpractice claim in her capacity as the executrix of the estate was barred by the one-year statute of limitations under R.C. 2305.11(A); (2) appellant was not the real party in interest; because the estate was closed when the complaint was filed, appellant was no longer the fiduciary of the estate and thus had no authority to sue on behalf of the estate; and (3) appellant's attempt to back date her appointment as the proper representative of the estate via a nunc pro tunc entry was invalid. Davis' summary judgment motion did not address the Trust's legal malpractice claim.
 {¶ 8} In her memorandum contra summary judgment, appellant argued that (1) the estate's legal malpractice claim was not barred by the statute of limitations; (2) as trustee of the Trust, appellant had the authority to sue on the estate's legal malpractice claim; (3) the re-opening of the estate and her re-appointment as executrix properly related back; (4) because Davis failed to deny appellant's capacity to sue by specific negative averment in his answer as required under Civ.R. 9(A), he waived that defense; and (5) the probate court's nunc pro tunc entry re-opening the estate could not be collaterally attacked.
 {¶ 9} On November 14, 2005, the trial court found there was a genuine issue of material fact as to whether the estate's legal malpractice claim was barred by the statute of limitations. Thus, summary judgment could not be granted on that issue. The trial court, however, agreed with Davis that appellant was not the real party in interest when she filed the estate's legal malpractice claim and granted summary judgment to Davis as follows:
 {¶ 10} "It is clear to this Court [appellant's] status as fiduciary of the Estate of Arthur B. Casey *Page 4 
was terminated when the estate was closed on October 3, 2003. In order to bring this action as fiduciary of the estate [appellant] should have requested the probate court to reopen the estate and have her reappointed. She did not do so until after the expiration of the statute of limitations for legal malpractice. When this case was filed she had no capacity to file on behalf of the estate. Her lack of standing is fatal to this case. The nunc pro tunc entry from the probate court fails to cure the defect. The Court notes that when the estate was reopened on November 15, 2004, [appellant] would, and did have the authority to bring this action. However, even [appellant] agrees that the statute of limitations would run by October, 2004.
 {¶ 11} "Accordingly, [appellant] lacked standing to bring this action. Therefore, [Davis'] Motion for Summary Judgment is GRANTED on this issue. Case dismissed."
 {¶ 12} We note that the caption of the trial court's entry only refers to appellant's status as the executrix of the estate. Neither the caption nor the body of the entry refer to the fact that appellant was the trustee of the Trust and that she filed a legal malpractice claim on behalf of the Trust.
 {¶ 13} This appeal follows in which appellant raises two assignments of error.
 {¶ 14} Assignment of Error No. 1:
 {¶ 15} "THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFF-APPELLANT LACKED STANDING TO BRING THIS ACTION AND THEN DISMISSING THE LEGAL MALPRACTICE CLAIMS OF THE ESTATE."
 {¶ 16} Appellant argues that the trial court erred by granting summary judgment to Davis with regard to the estate's legal malpractice claim. Specifically, appellant argues that she had standing to assert the estate's legal malpractice claim because (1) as trustee of the Trust, she could sue on the estate's legal malpractice claim; (2) the re-opening of the estate and her re-appointment as executrix of the estate related back; (3) Davis waived the defense of lack of capacity; and (4) the probate court's nunc pro tunc entry re-opening the estate cannot be collaterally attacked. *Page 5 
 {¶ 17} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Our standard of review on summary judgment is de novo. Jones v. Shelly Co. (1995),106 Ohio App.3d 440.
 {¶ 18} Appellant first argues that as trustee of the Trust, she had the authority to assert the estate's legal malpractice claim and citesElam v. Hyatt Legal Services (1989), 44 Ohio St.3d 175 in support. We agree.
 {¶ 19} In Elam, the executor of a decedent's estate retained an attorney to assist in the administration of the estate. Beneficiaries of the estate filed a complaint against the attorney for negligence. The trial court granted summary judgment in favor of the attorney. The trial court found that the attorney represented the executor, that no privity existed between the executor and the beneficiaries under the will, and that as a result, the attorney was not responsible to the beneficiaries for his actions. The Ohio Supreme Court reversed, stating:
 {¶ 20} "`An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously.' * * * It is the duty of a fiduciary of an estate to serve as representative of the entire estate. Such fiduciary, in the administration of an estate, owes a duty to beneficiaries to act in a manner which protects the beneficiaries' interests. We believe that this duty places the beneficiaries in privity with the executor. * * * A beneficiary whose interest in an estate is vested is in privity with the fiduciary of the estate, and where such privity exists the attorney for the fiduciary is not immune from liability to the vested beneficiary for damages arising from the attorney's negligent performance." Id. at 176-177 (citations omitted). *Page 6 
 {¶ 21} In the case at bar, the trial court found that appellant did not have standing to bring the estate's legal malpractice claim because appellant was not the executrix at the time she filed the complaint. However, at that time, appellant was also the trustee of the Trust. It is undisputed that the Trust is the sole beneficiary of Mr. Casey's will. Because the Trust is the beneficiary of the estate, and not apotential beneficiary, it has a vested interest in the estate. Id. at 177. Applying Elam here, we find that the Trust was in privity with appellant in her capacity as the executrix of the estate. Id. at 176. It follows then that Davis is not immune from liability to the Trust, the vested beneficiary, for damages arising from his negligent performance. Id. at 177. We therefore find that as trustee of the Trust, appellant had the authority to assert the estate's legal malpractice claim.
 {¶ 22} Appellant next argues that the probate court's nunc pro tunc re-opening of the estate and her re-appointment as executrix of the estate properly related back to the May 1998 original date, and citesArchdeacon v. Cincinnati Gas Electric Co. (1907), 76 Ohio St. 97, in support. Davis counters that Archdeacon does not apply and that the nunc pro tunc entry was improper.
 {¶ 23} In Archdeacon, the Ohio Supreme Court held that "the general rule that the due qualification of an administrator relates back to the time of his appointment as regards acts done by him in the interim which are for the benefit of the estate applies to a case of this character. The commencement of the suit by the administrator, therefore, being for the benefit of the estate, was the valid commencement of an action." Id. at paragraph four of the syllabus.
 {¶ 24} In Archdeacon, the plaintiff filed a wrongful death complaint against the defendants in his capacity as the administrator of an estate. In their answer, the defendants admitted that the plaintiff was "the duly appointed and qualified administrator of the estate." After the expiration of the statute of limitations, the defendants filed an amended answer claiming that the plaintiff was not qualified as administrator, and thus was without legal capacity to maintain the action, because the proper bond was not executed or letters of authority were not timely issued. The trial court dismissed the case. The *Page 7 
supreme court reversed the trial court's decision, finding that this was an improper use of the trial court's discretion.
 {¶ 25} The supreme court stressed that where "the answer admits that the plaintiff is the duly appointed and qualified administrator of the deceased, and, the case being reached for trial more than two years after the death, the defendant asks leave to amend the answer by a denial of the due appointment and qualification of the plaintiff as administrator, for the purpose only of interposing the two years bar of the statute, such leave, not being in the furtherance of justice, should be refused." Id at paragraph two of the syllabus. In the case at bar, unlike in Archdeacon, Davis never admitted that appellant was the executrix of the estate. To the contrary, in his answer, Davis generally denied that appellant was the executrix and raised the affirmative defense of real party in interest. Thus, unlike in Archdeacon, Davis did not withhold or amend these defenses after the statute of limitations expired. Rather, he asserted them from the start of the litigation. For these reasons, we find that Archdeacon does not apply here.
 {¶ 26} Appellant also cites Douglas v. Daniels Bros. Coal Co.,69 Ohio St.3d 508, 1994-Ohio-359, in support of her argument that the re-opening of the estate properly related back. In Douglas, a widow filed a wrongful death action under the mistaken belief that she had been appointed administrator of the estate of the decedent. She later discovered her mistake and corrected it by seeking and obtaining a court appointment to be administrator. She then filed an amended petition in which she alleged she was the duly appointed and qualified administratix of the estate. The amended petition also stated that the widow adopted and ratified her act in commencing the suit. It was undisputed that the original petition was filed within the statute of limitations and that the amended petition was filed after the statutory period of limitations had expired.
 {¶ 27} The Ohio Supreme Court held that "where a widow institutes an action as administratix, for damages for the wrongful death of her husband, under the mistaken belief that she had been duly *Page 8 
appointed and had qualified as such, thereafter discovers her error and amends her petition so as to show that she was appointed administratix after the expiration of the statute of limitation applicable to such action, the amended petition will relate back to the date of the filing of the petition, and the action will be deemed commenced within the time limited by statute." Id. at 648. The supreme court's holding was based upon the finding that "the cause of action set up in the [original] petition [was] in no way affected by the corrections contained in the amendment." Id. at 647.
 {¶ 28} We are not convinced that the holding in Douglas applies here. In the case at bar, it is not disputed that appellant was properly appointed executrix in 1998 following her father's death. However, the estate was then closed in October 2003. After that, appellant was no longer the executrix until, upon her attorney's motion, the estate was reopened and she was reappointed by the probate court's nunc pro tunc entry in November 2004. During that interim, she filed her legal malpractice claim on behalf of the estate. In Douglas, there is no evidence that the estate was ever closed during the proceedings or that the widow filed her amended petition while the estate was closed. The facts are therefore not analogous.
 {¶ 29} Davis correctly asserts that "the proper use of nunc pro tunc entries is limited to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide." See State ex rel Fogle v. Steiner, 74 Ohio St.3d 97, 100,1996-Ohio-278.
 {¶ 30} It is well-established that "courts possess inherent common-law power to enter judgments or orders nunc pro tunc in proper cases. The phrase, meaning simply `now for then,' is accurately descriptive. The general purpose of such an entry is to record a prior but unrecorded act of the court. In other words, the power to make nunc pro tunc entries is restricted ordinarily to the subsequent recording of judicial action previously and actually taken." Natl. Life Ins. Co. v. Kohn (1937),133 Ohio St. 111, 113. A "nunc pro tunc order is a vehicle used to correct an order previously issued which fails to reflect the trial court's true action. It is an order issued now, which has the same *Page 9 
legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors." Collins v. Robinson, Montgomery App. No. 20954, 2006-Ohio-407, ¶ 9 (citations omitted).
 {¶ 31} In the case at bar, the probate court intended to and did close the estate and terminate appellant's appointment as executrix of the estate in October 2003. There was no other action which the probate court took but failed to record in October 2003 which required correction in November 2004. See In re Cook's Estate (1969),19 Ohio St.2d 121, 124 (a probate court should enter a nunc pro tunc entry to correct defects in an original entry when that original entry fails to record judicial action previously actually taken). We have not found, and appellant has not cited any cases, in which a probate court, via a nunc pro tunc entry, has related a re-opening of an estate and a re-appointment of a fiduciary of an estate back to the original date of opening and appointment.
 {¶ 32} In light of all of the foregoing, appellant's argument that the re-opening of the estate and her re-appointment as executrix related back is without merit.
 {¶ 33} Appellant next argues that the probate court's entry cannot be collaterally attacked.
 {¶ 34} It is well-established that a probate court has jurisdiction in probate and testamentary matters, the appointment of administrators, granting and revoking letters testamentary and of administration, and the settlement of accounts of executors and administrators. SeeHoffman v. Fleming (1902), 66 Ohio St. 143. The decision whether to grant a motion to reopen an estate is within the discretion of a probate court. See In re Estate of Smith, Seneca App. No. 13-02-37, 2003-Ohio-1910. Most of the cases cited by appellant for the proposition that a probate court's entry cannot be collaterally attacked involve the appointment of a guardian and thus are not applicable here. See In reGuardianship of Rudy, 65 Ohio St.3d 394, 1992-Ohio-69; In re Clendenning(1945), 145 Ohio St. 82; *Page 10 and Heckman v. Adams (1893), 50 Ohio St. 305. Appellant, however, properly cites Union Sav. Bank Trust Co. v. Western Union TelegraphCo. (1908), 79 Ohio St. 89 in support of her argument. We note that Davis did not respond to this argument in his appellate brief.
 {¶ 35} In Union Sav. Bank Trust Co., a judgment won by the plaintiff against Western Union Telegraph Company ("Western Union") was reversed and remanded for a new trial. Before retrial, the plaintiff died. Union Savings Bank Trust Company ("Union"), which was named in the plaintiffs will as executor, was appointed and qualified as executor of the estate. Union was then substituted as plaintiff in the action against Western Union. However, the order reviving the action in the name of Union, the executor, was reversed on the ground that Union was legally incompetent to be an administrator or executor. Union appealed. The Ohio Supreme Court reversed, holding:
 {¶ 36} "An order of the probate court appointing an executor, if made without jurisdiction, is void, and it may be disregarded in any other court; but, if made in the exercise of proper jurisdiction over the subj ect-matter and estate, although based upon erroneous conclusions of law or fact, it cannot be collaterally attacked." Id. at second paragraph of the syllabus. The supreme court found that since the probate court had jurisdiction of the subject-matter and of the estate, its appointment of Union as the executor "could not be ignored in any collateral proceeding, and could not be reviewed or set aside in any other way than in a direct proceeding for that purpose. The defendant * * * might have attacked the appointment in the probate court, or by appeal or error. It did not do so, and cannot complain if it now finds itself bound by the presumptions which arise upon the record." Id. at 100.
 {¶ 37} In the case at bar, the probate court had jurisdiction to reopen the estate and re-appoint appellant as executrix of the estate. There is no evidence in the record that Davis challenged the probate court's decision. In light of the supreme court's holding in Union Sav.Bank Trust Co., the probate court's decision reopening the estate and re-appointing appellant as the executrix cannot be collaterally attacked. *Page 11 
 {¶ 38} Finally, appellant argues that because Davis failed to deny her capacity to sue by specific negative averment in his answer as required under Civ.R. 9(A), he waived that defense.
 {¶ 39} We note that the trial court interchangeably used the terms "standing," "capacity to sue," and "real party in interest." Davis argued below that appellant was not the real party in interest in this case, because she did not have the capacity to file the legal malpractice claim on behalf of the estate as she was no longer its executrix at the time of the filing. The trial court held that because appellant was not the executrix of the estate when she filed the estate's legal malpractice claim and did not become such until after the statute of limitations expired, she had no capacity to sue Davis on behalf of the estate. However, "capacity to sue" and "real party in interest" are two different concepts, governed by two different rules of civil procedure.
 {¶ 40} Civ.R. 17(A) governs real party in interest and provides in pertinent part: "Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, * * * may sue in his name as such representative without joining with him the party for whose benefit the action is brought. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."
 {¶ 41} Civ.R. 17 "addresses the allegation of viable claims brought by an incorrect party. [Civ.R. 17(A)] requires that an action be brought by the real party in interest. * * * The real party in interest is the person who has an actual and substantial interest in the action, not just a formal or technical interest in the subject matter of the action. * * * A `real party in interest' has been defined as `one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case.' `The test in *Page 12 
establishing who is the real party in interest entitled to maintain an action is to determine who would be entitled to damages.'" Guide to the Ohio Rules of Civil Procedure (2006 Ed.) 17-3 to 17-5, Section 17:3, citing, inter alia, Community Ins. Co. v. Ohio Dept. of Transp.,92 Ohio St.3d 376, 2001-Ohio-208. When an action is prosecuted in the name of the real party in interest, and that party is awarded judgment, the party against whom the judgment is awarded is protected from the possibility of multiple judgments against him. See Oda v. Davis (1992),81 Ohio App.3d 555.
 {¶ 42} Although many Ohio courts have used "real party in interest" and "capacity to sue" interchangeably, the real party in interest requirement is to be distinguished from capacity to sue. Guide to the Ohio Rules of Civil Procedure 17-9, Section 17:3. Capacity to sue "refers to the eligibility of a person to commence an action. A person may be a real party in interest yet lack capacity, for example, because she is a minor or legally incompetent." Id. at 17-10. "Generally, capacity can be defined as a party's personal qualifications to litigate which, in most instances, is determined without regard to the claims being asserted. * * * Though [a] plaintiff may have the capacity to sue * * *, it does not necessarily follow that it is sufficiently `interested' in the subject matter of th[e] action to satisfy the requirement of Civ.R. 17(A)." Id., fn. 14 (citations omitted).
 {¶ 43} Civ.R. 9(A) governs capacity and provides in pertinent part that "[w]hen a party desires to raise an issue as to the * * * capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge. " Thus, Civ.R. 9(A) places the pleading burden upon a defendant to deny, by specific negative averment or with particularity, a plaintiffs capacity to sue. The defense of lack of capacity to sue is typically waived when an answer only contains a general denial and when the defense is not raised by specific negative averment. See Logan Co., Inc. v. Cities of America,Inc. (1996), 112 Ohio App.3d 276; Gove Associates, Inc. v. Thomas
(1977), 59 Ohio App.2d 144. *Page 13 
 {¶ 44} In the case at bar, Davis raised the affirmative defense of real party in interest in his answer. However, with regard to appellant's capacity to sue, his answer only contained a general denial as to appellant's status as the executrix of the estate and did not include any allegation concerning appellant's capacity to sue. That is, the answer is devoid of any specific negative averment as required under Civ.R. 9(A). We therefore find that Davis waived the defense of lack of capacity.
 {¶ 45} In its decision granting summary judgment to Davis, the trial court actually ruled on appellant's capacity to sue rather than whether she was the real party in interest. However, because the defense of lack of capacity was waived by Davis, the trial court could not rule on appellant's capacity to sue.
 {¶ 46} We note that in support of its ruling, the trial court citedRamsey v. Neiman, 69 Ohio St.3d 508, 1994-Ohio-359. In Ramsey, the father of a decedent, as the alleged administrator of the decedent's estate, brought a wrongful death action against a landlord. However, the father had never been appointed as the estate's administrator and never applied to the probate court to be administrator. At issue before the Ohio Supreme Court was "whether a wrongful death action may be brought under R.C. Chapter 2125 by a person who has not been appointed by a court to be the decedent's personal representative." Id. at 509. The supreme court answered in the negative and held that "[a] cause of action in wrongful death arising under R.C. Chapter 2125 must be brought in the name of a person appointed by a court to be the administrator, executor, or personal representative of the decedent's estate." Id. at 512. Based on the very specific issue that was before the supreme court in Ramsey, we find that Ramsey is not applicable to the case at bar.
 {¶ 47} In light of all of the foregoing, we find that the trial court erred by granting summary judgment to Davis concerning the estate's legal malpractice claim. Appellant's first assignment of error is sustained.
 {¶ 48} Assignment of Error No. 2: *Page 14 
 {¶ 49} "THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFF-APPELLANT LACKED STANDING TO BRING THIS ACTION AND THEN DISMISSING THE LEGAL MALPRACTICE CLAIMS OF THE TRUST WHEN PLAINTIFF-APPELLANT, IN FACT, WAS THE TRUSTEE OF THE TRUST AT THE TIME THE COMPLAINT WAS FILED."
 {¶ 50} As noted earlier, appellant filed her legal malpractice complaint both as the executrix of the estate and the trustee of the Trust. Davis moved for summary judgment, but only on the legal malpractice claim filed by appellant as the executrix of the estate. Davis never moved for summary judgment on the legal malpractice claim of the Trust. The trial court granted Davis' motion for summary judgment, yet dismissed the entire case, thus dismissing the Trust's legal malpractice claim.
 {¶ 51} On appeal, appellant argues that because the Trust had its own legal malpractice claim and because she was the trustee of the Trust on the date the complaint was filed, the trial court erred by dismissing the Trust's legal malpractice claim. Davis counters that because there was no genuine issue of material fact as to whether the filing of the Trust's federal and state income tax returns was the responsibility of Mr. Casey and his accountant, summary judgment was appropriately granted.
 {¶ 52} We first note that whether there was a genuine issue of fact as to the filing of the Trust's income tax returns was not the basis of the trial court's decision dismissing the Trust's legal malpractice claim. Upon finding that appellant lacked standing to bring the estate's legal malpractice claim, the trial court granted Davis' motion for summary judgment and dismissed both the estate's and the Trust's legal malpractice claims. We further note that the trial court could not have granted summary judgment to Davis regarding the Trust's legal malpractice claim because Davis never moved for summary judgment on this claim. See Bowen, 63 Ohio St.3d at 94 (since appellees never moved for summary judgment on appellants' claims for negligent infliction of emotional distress, appellees were not entitled to summary judgment on these claims); Ferro Corp. v. Blaw Knox Food Chem. Equip. Co. (1997),121 Ohio App.3d 434 (the trial court committed reversible error by granting summary *Page 15 
judgment in favor of a party who had not moved for judgment).
 {¶ 53} We agree with appellant that the trial court erred by dismissing the Trust's legal malpractice claim when it dismissed the entire case after granting summary judgment to Davis regarding the estate's legal malpractice claim. Appellant's second assignment of error is sustained.
 {¶ 54} Judgment reversed and remanded for further proceedings in accordance with the law and this opinion.
BRESSLER and POWELL, JJ., concur.
Copies mailed to:
Steven E. Goren
Gerald J. Todaro
Hon. Stephen Yarbrough
[1] G. Jack Davis, Jr. died on March 4, 2007. By separate entry and upon motion of the appellee, we recently substituted "Trisha M. Duff, Executor of the Estate of Giles Jackson Davis, Jr., aka G. Jack Davis" for G. Jack Davis, Jr. as the Defendant-Appellee in this matter. *Page 1