[Cite as *In re Estate of Nugent*, 2023-Ohio-700.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re Estate of George W. Nugent, | : | |
| | : | No. 22AP-296 |
| | | (Prob. No. 604684) |
| [Ashley Thompson, | : | |
| | | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on March 7, 2023

**On brief:** *Jay E. Michael Law, LLC, Jay E. Michael*, and *Carol A. Wright*, for the Estate of George W. Nugent. **Argued:** *Jay E. Michael*.

**On brief:** *Thomas Taneff Co., LPA, Thomas Taneff*, and *Taylor Sayers, Reminger Co., LPA*, and *Adriann McGee,* for appellant. **Argued:** *Taylor Sayers*.

APPEAL from the Franklin County Court of Common Pleas, Probate Division

BEATTY BLUNT, P.J.

{¶ 1} Appellant, Ashley Thompson ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, overruling appellant's objections to a magistrate's decision and adopting the magistrate's decision granting the motion to remove appellant as administrator of the estate of George W. Nugent (the "Estate"), and appointing appellee, Jay E. Michael, Esq., as successor administrator. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} George W. Nugent ("Decedent"), died a resident of Franklin County on April 16, 2020. (Jgmt. Entry at 2.) It is undisputed Decedent died intestate.

{¶ 3} Decedent's sole next of kin and heir pursuant to R.C. 2105.06 is his sister, Nancy Nugent ("Ms. Nugent"), who lives in Pennsylvania. (May 16, 2022 Jgmt. Entry at

2.)  At the hearing, the evidence showed that although Ms. Nugent is deemed competent to make informed decisions, she has been diagnosed with severe anxiety disorder, obsessive compulsive disorder, and major depression.  (Tr. at 15-16; Jgmt. Entry at 2.)  Ms. Nugent is not employed and relies on income-eligible benefits, including Medicaid, Medicare, and Social Security.  (Tr. at 16, 18; Jgmt. Entry at 2.)  Ms. Nugent is also the beneficiary of a trust previously established by the deceased mother of Decedent and Ms. Nugent.[1]  (Jgmt. Entry at 2.)  At the hearing, Ms. Nugent testified that she did not feel like she was taken advantage of "in this case," but admitted she was "not very good at" conflict.  (Tr. at 24-25.)

{¶ 4}  At the hearing on the motion to remove appellant as administrator held on July 19, 2021 (the "hearing"), appellant testified that after Decedent's death on April 16, 2020, the coroner called her and her husband.  (Tr. at 6.)  The coroner found their phone numbers "because [Decedent] had all of his drafted wills laying out on his table."  *Id.* According to appellant, prior to his death, Decedent was in the process of drafting a will, which allegedly named herself and her husband, Russell Thompson, as the main beneficiaries of Decedent's estate.  (Tr. at 10-11.)  Appellant agrees, however, there is no valid will in this case.  (Tr. at 7.)  Furthermore, inexplicably, a copy of the purported draft will (or wills) was never filed in the trial court—including at the hearing—and it is not part of the record.

{¶ 5}  Appellant further testified that the coroner was trying to obtain a contact number for Ms. Nugent, but at the time of the coroner's phone call, appellant did not have Ms. Nugent's telephone number.  *Id.*  Ultimately, the coroner released the body of Decedent to appellant and her husband, who arranged for disposition of the body.  *Id.* at 6-7.[2]

{¶ 6}  On July 2, 2020, appellant was appointed administrator of Decedent's estate. On November 6, 2020, appellant filed an inventory showing $2,102,962.82 in probate assets.  That very same day, appellant filed an assignment[3] of Ms. Nugent's entire interest in Decedent's $2.1 million dollar estate to appellant.

---

[1] Although the record is devoid of specific evidence of how much income Ms. Nugent derives from the trust, it is obviously not enough to render her ineligible for the income-based government benefits she receives.

[2] Appellant was reimbursed $3,247.55 for the burial costs.  (Jgmt. Entry at 3.)  It is unclear from the record whether appellant contacted Ms. Nugent regarding burial preferences prior to final disposition of Decedent's body.  *Id.*

[3] The record shows that two witnesses signed the assignment, and it was notarized.

{¶ 7}    At the hearing, the trial court was understandably interested in how the assignment came to be and requested that appellant provide an explanation for its genesis. In response to the court's questioning, appellant testified that the assignment was drafted by counsel for appellant at appellant's request.  (Tr. at 10.)  Appellant went on to testify as follows:

> I had a phone conversation with Nancy on the - - let's see here - - on September 25th, 2020 and - - Nancy Nugent.  I Was just - - one of our many phone calls, just to update her on the estate, see if she had any questions.  Those questions led to her saying, you know, I'm surprised he didn't have a will.
>
> I told her he had one - - he was working on one, but it just never was drafted - - or it was drafted, but it's not valid and that she's the next of kin and everything would be going to her.
>
> She started asking me about his drafted will.  You know, who was in it?  And then she mentioned that she'd like to honor her brother's wishes if she could.  I said, I don't know if that's something that we can do and that's something that you really need to think about.
>
> And then I had - - let's see, 1, 2, 3 - - 4 more conversations with her after that.  And each conversation, she brought it up to see if I had spoken to an attorney yet about possibly honoring her brother's wishes.
>
> And I eventually did, which is Thomas Taneff and Taylor Sayers. And they said, we can do something like an assignment, if that is what she wishes.  And she can assign everything over to me in the drafted will, which is what she wanted to honor of her brother's.  My husband and I are listed as the main beneficiaries.

(Sic passim.) (Tr. at 9-10.)

{¶ 8}    Appellant further testified that on December 17, 2020—over a month after the assignment had been filed—appellant spoke with Ms. Nugent and Ethan Ordog, the trustee of Ms. Nugent's mother's estate.  (Tr. at 11.)  During this conversation, appellant learned from Mr. Ordog that if Ms. Nugent assigned her interest in her inheritance of Decedent's estate, she would lose her Medicaid benefits.  (Tr. at 11.)

{¶ 9}    Later in the hearing, counsel for appellant testified that after the assignment was drafted, appellant personally took the draft assignment to Ms. Nugent to obtain her

signature.  *Id*. at 18-19.  Counsel for appellant further testified that she did not believe appellant had acted inappropriately as fiduciary; that appellant had upheld her statutory duties; and that appellant had not engaged in any financial exploitation.  Specifically, counsel for appellant testified as follows:

> I do not believe that we work with a better fiduciary than Ms. Thompson.  She is on top of it; she knows every detail about this estate; she is quick to get everything back; and I can tell you from our experience with her, that everything that she has done, she did at the direction of Ms. Nugent.
>
> She spoke with us about the assignment.  We sat on it for a few weeks, so that she could give Nancy time to think about it.  We prepared it, sat on it again to make sure still Nancy is okay with it.
>
> * * *
>
> Nancy executed the document that she wanted to execute.  It was all done at her direction.  And then, once Nancy decided that she needed to revoke that, that she needed to go back on it, Ms. Thompson didn't even question it.
>
> In fact, what she did was research some different Pennsylvania attorneys and provide attorney names to Ms. Nugent, because she agreed that Ms. Nugent should have some legal representation in addition to asking us to prepare the revocation.

*Id*. at 18-19.

{¶ 10} Thus, the testimony of counsel for appellant shows that until it was discovered that Ms. Nugent would lose her Medicaid benefits if she assigned her interests in her brother's estate to appellant—after the assignment had already been filed and when counsel for appellant was in the process of preparing the revocation to correct the error— no one had suggested that Ms. Nugent seek legal advice on the matter. Furthermore, upon being questioned by the court as to whether counsel for appellant had done any research as to whether the assignment would be in the best interests of Ms. Nugent, the sole beneficiary of the estate to whom appellant owed a fiduciary duty, counsel responded:

> We did some - - some brief research.  We are not attorneys in Pennsylvania, obviously.  We were not sure the extent of Ms. Nugent's benefits.  So we did do some research, and at the time

> that the assignment was prepared, we believed it was possible
> it could be done without hurting her benefits.
>
> Unfortunately, once we, you know, found out later that that was
> not the case, the revocation was done.

*Id.* at 20.

{¶ 11} Ms. Nugent also testified at the hearing, stating that although initially she wanted to follow her brother's wishes, upon later realizing that she would lose her Medicaid benefits if she assigned her interest in the estate to the Thompsons, she no longer wished to give away her interest. (Tr. at 12.) Specifically, Ms. Nugent testified "I don't want to do that now, but I did want to do it. I didn't realize that I couldn't give it away and stay on Medicaid. I didn't consider it giving it away; I consider it to be what my brother wanted." *Id.*

{¶ 12} Notably, there is no testimony from any of the parties that appellant ever provided a copy of the draft will to Ms. Nugent. Nor is there any testimony that Ms. Nugent actually reviewed a copy of the draft will obtained from any other source. As pointed out earlier, the purported draft will was never filed in the trial court and is not part of the record. Thus, other than the representations and testimony of appellant regarding what the draft will contained, the record is entirely unclear as to the source of Ms. Nugent's understanding regarding Decedent's purported wishes that everything be left to appellant and her husband.

{¶ 13} On April 1, 2021, appellant filed an application for transfer of Decedent's motor vehicle premised on its purchase by Roush Honda. No application to sell personal property was filed as required, and no entry authorizing the administrator to sell Decedent's personal property had been issued. (Jgmt. Entry at 3-4.) Despite this, unfortunately the trial court inadvertently approved the application for transfer of the motor vehicle. *Id.* at 4. At the hearing, appellant testified that, originally, she planned to transfer the vehicle to herself, but her attorney advised against it. (Tr. at 8.) Appellant testified that she told Ms. Nugent she was going to sell Decedent's car and that Ms. Nugent mentioned "finding a way to give the car to her [appellant]." *Id.* Ms. Nugent did not testify on this subject at the hearing.

{¶ 14} On April 15, 2021, over four months after learning that Ms. Nugent would lose her Medicaid benefits if she assigned away her interest in her brother's estate in favor of appellant, appellant filed a revocation of Ms. Nugent's assignment.

{¶ 15} In May, 2021, Rhonda Hill ("Ms. Hill"), an investigator with the Financial Exploitation division of the Philadelphia Corporation for Aging, contacted the Probate Court. (Jgmt. Entry at 4.) At the hearing, Ms. Hill testified that her organization had "received a report of concern that this might be a possible case of financial exploitation because the consumer, Ms. Nugent, was giving away her rights as beneficiary and that the administrator wasn't acting responsibly * * * [a]ccording to the fiduciary duties." (Tr. at 14.) Ms. Hill launched an investigation. *Id*. at 14-15.

{¶ 16} Ms. Hill further testified that, after consulting with Ms. Nugent's primary care physician, it was determined that Ms. Nugent "does have capacity to make informed decisions." However, the physician's report indicated that Ms. Nugent suffered from anxiety, "which sometimes can prevent her from doing certain things." *Id*. at 15. Ms. Hill continued her testimony thus:

> So from our perspective, what I was - - what I was informing Ms. Nugent, is that we just want to make sure that she understands what's happening. If you're - - basically giving away your rights to someone else and if she understood that.
>
> But most importantly, she needed legal representation, which she is still in the process of, you know, getting. So our – our role in this instance is to make sure that, for one, she understands she has rights and she needs the counsel, legal counsel. I am not the legal counsel representations. But also, with the allegations at hand of the administrator not acting in Ms. Nugent's best interest poses, you know, concerns.

*Id*. at 15-16.

{¶ 17} Ms. Hill further testified that it was her organization's position that Ms. Nugent was being exploited, and that despite the testimony of both appellant and counsel for appellant that "some research was done, * * * it just still appears as Ms. Thompson is not acting in the best interest of Ms. Nugent." (Tr. at 23.) Ms. Hill continued that as an outsider person looking in,

> Ms. Nugent is strictly going solely by everything that Ms. Thompson is saying, even though the will was not valid,

> basically. So it's - - there's no way to determine if Mr. Nugent
> - - if this was even his wishes.
>
> We really do not know that. We're basically going by hearsay.
> And Ms. Nancy does want to remain as beneficiary of his estate.
> She does not want to give it away.

*Id.*

{¶ 18} On May 26, 2021, Ms. Nugent filed a pro se motion to remove appellant as administrator of the estate. Despite having filed this motion, at the hearing Ms. Nugent testified that she wanted appellant to remain as administrator. (Tr. at 5, 17.) When questioned by the court as to why she had changed her mind, Ms. Nugent testified "[b]ecause my brother [Decedent] wanted her to administer to the estate." *Id.* at 5. She further testified that she understood Decedent did not leave a valid will, "but he left a will that he was working on." *Id.* at 17.

{¶ 19} On July 20, 2021, the magistrate issued a decision finding that appellant had not properly carried out her fiduciary duties and removing her as administrator of the estate pursuant to R.C. 2109.24. (*See generally,* Mag.'s Decision.) More specifically, the magistrate found that appellant had demonstrated an inability to put the interests of Ms. Nugent ahead of her own. *Id.* at 9. The magistrate further found that appellant's actions had put Ms. Nugent's Medicaid disability payments in jeopardy and could have deprived her of the inheritance she would have needed once she became ineligible for Medicaid benefits due to the assignment. *Id.* The magistrate recommended removal of appellant as administrator and the appointment of Jay E. Michael, Esq. as successor administrator of the estate. *Id.*

{¶ 20} On August 4, 2021, Jay E. Michael, Esq. was appointed successor administrator after he filed an application and posted the requisite bond.

{¶ 21} On August 5, 2021, appellant filed objections to the magistrate's decision. On May 16, 2022, the trial court issued its judgment entry overruling objections and approving and adopting the magistrate's decision issued July 20, 2021. (*See* Jgmt Entry.)

{¶ 22} On May 20, 2022, appellant filed this timely appeal.

## II. Assignments of Error

{¶ 23} Appellant asserts the following assignments of error for our review:

[1.] The Trial Court erred in removing Appellant Ashley Thompson as Administrator of the Estate of George W. Nugent.

[2.] The Trial Court erred in finding Appellant Ashley Thompson committed a "per se violation" of her fiduciary duty of loyalty.

## III.  Law and Analysis

{¶ 24} A probate court may remove an estate fiduciary pursuant to R.C. 2109.24, which provides:

> The court may remove any such fiduciary, after giving such fiduciary not less than ten days' notice for habitual drunkenness, neglect of duty, incompetency, fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law.

{¶ 25} The removal of a fiduciary pursuant to R.C. 2109.24 "rests in the sound discretion of the probate court." *In re Estate of Christy,* 10th Dist. No. 87AP-472, 1987 Ohio App. LEXIS 9391, *3 (Oct. 27, 1987).  "Removal under R.C. 2109.24 is an issue to be determined on a case-by-case basis." *Id.*, citing *In re Estate of Jarvis*, 67 Ohio App.2d 94 (8th Dist.1980).  "Absent a showing that there is a clear abuse of that discretion, this court will not reverse the decision of the probate court on a motion for removal." *Id.*, citing *Jarvis, supra*; *In re Estate of Bost*, 10 Ohio App.3d 147 (8th Dist.1983); *In re Trust of Marshall*, 78 Ohio App.1 (10th Dist.1946).

{¶ 26} An abuse of discretion is more than an error in judgment; rather, it means that the decision of the trial court was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  When applying the abuse of discretion of standard, a reviewing court may not substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-38 (1990).

{¶ 27} With the foregoing authority in mind, we turn to appellant's assignments of error.  For ease of discussion, we address appellant's assignments of error out of order.

{¶ 28} In appellant's second assignment of error, she asserts that the trial court erred in finding that she committed a "per se violation" of her fiduciary duty of loyalty.  We disagree.

{¶ 29} Generally, " [a] 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of

superiority or influence, acquired by virtue of this special trust." (Internal quotations omitted.) *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 35, quoting *Stone v. Davis*, 66 Ohio St.2d 74, 78 (1981), quoting *In re Termination of Emp. Of Pratt*, 40 Ohio St.2d 107, 115 (1974). " 'A "fiduciary" has been defined as a person having a duty, created by his undertaking, to act *primarily for the benefit of another* in matters connected with his undertaking.' " (Emphasis sic.) (Internal quotations omitted.) *Id.*, quoting *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988), quoting *Haluka v. Baker*, 66 Ohio App. 308, 312 (1941), quoting 1 Restatement of the Law, Agency, Section 13, Comment a (1933). "Where the law creates fiduciary relations, it seeks to prevent the abuse of confidence, by insuring the disinterestedness of its agents. * * * The temptation to abuse power for selfish purposes is so great that nothing less than that incapacity is effectual, and thus a disqualification is wrought by the mere necessity of the case. Fullness of price, absence of fraud, and fairness of purchase are not sufficient to countervail this rule of policy." *Armstrong v. Heirs of Huston*, 8 Ohio 552, 554 (1838).

{¶ 30} In the specific context of estate administration, " '[f]iduciary,' * * * means any person * * * appointed by and accountable to the probate court and acting in a fiduciary capacity for any person, or charged with duties in relation to any property, interest, trust, or estate for the benefit of another." R.C. 2109.01. " ' "It is the duty of a fiduciary of an estate to serve as representative of the entire estate." ' " *In re Estate of Garza*, 10th Dist. No. 12AP-1000, 2013-Ohio-2750, ¶ 12, quoting *Wanamaker v. Davis*, 2d Dist. No. 2005-CA-151, 2007-Ohio-4340, ¶ 20, quoting *Elam v. Hyatt Legal Servs.*, 44 Ohio St.3d 175, 176 (1989). "Such fiduciary, in the administration of an estate, *owes a duty to beneficiaries to act in a manner which protects the beneficiaries' interests*." (Emphasis added.) *Id.*, quoting *Elam* at 176. In *Elam*, the Supreme Court of Ohio observed "[t]he principle that a fiduciary of an estate owes a duty to the estate's beneficiaries is shared by other jurisdictions." *Elam* at 176. The court went on to quote favorably from *In re Estate of Larson*, 103 Wash.2d 517, 520-21, 694 P.2d 1051, 1054 (1985), stating:

> In probate, the attorney-client relationship exists between the attorney and the personal representative of the estate. * * * *The personal representative stands in a fiduciary relationship to those beneficially interested in the estate.* He is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs.

(Emphasis sic.) (Further citations omitted.)[4]

{¶ 31} It is hornbook law that "[a] fiduciary owes the utmost loyalty and honesty to his principal." *Burchfield v. McMillian-Ferguson*, 10th Dist. No. 10AP-623, 2011-Ohio-2486, ¶ 13, citing *Testa v. Roberts*, 44 Ohio App.3d 161 (6th Dist.1988). "The law is zealous in guarding against abuse in a fiduciary-principal relationship." *Id.* at ¶ 14, citing *In re Termination of Emp. Of Pratt*, 40 Ohio St.2d at 115. "Any transfer of property from a principal to his attorney-in-fact is viewed with some suspicion." *Id.*, citing *Studniewski v. Krzyzanowski*, 65 Ohio App.3d 628, 632 (1989).

{¶ 32} Furthermore, "[s]elf-dealing transactions by a fiduciary are presumptively invalid." *Burchfield* at ¶ 14, citing *In re Estate of Cunningham*, 5th Dist. No. 89-CA-10, 1989 Ohio App LEXIS 4158 (Oct. 25, 1989). "It is a most egregious violation of a fiduciary's duty to abuse the relationship through acts of self-dealing." *Id.*, citing *In re Estate of Harmon*, 9th Dist. No. 95CA0066, 1996 Ohio App. LEXIS 2335 (June 5, 1996). The Supreme Court long ago observed that it "has frequently declared with emphasis its disapproval of all schemes and devices by which trustees may seek, even with honest motives, to acquire in their own right, the trust property committed to their hands for administration in the interests of beneficiaries whose rights should be guarded with scrupulous fidelity." *Caldwell v. Caldwell*, 45 Ohio St. 512, 523 (1888). "Any relaxation of this salutary principle would be full of peril and uncertainty." (Further citations omitted.) *Id.*

{¶ 33} Because a fiduciary has a duty to act for someone else's benefit, a fiduciary "may not possess an interest that might conflict with the interest of the person to whom the fiduciary owes a duty." *Ford v. Brooks*, 10th Dist. No. 11AP-664, 2012-Ohio-943, ¶ 11, citing *Belvedere Condominium Unit Owners' Assn., v. R.E. Roark Cos.*, 67 Ohio St.3d 274, 282 (1993). "A conflict of interest is defined as ' "a real or seeming incompatibility between one's private interests and one's public or fiduciary duties." ' " *Burchfield* at ¶ 13, quoting *In re Testamentary Trust of Bernard*, 9th Dist. No. C.A. 24025, 2008-Ohio-4338, ¶ 16,

---

[4] The ultimate holding of *Elam* is that "[a] beneficiary whose interest in an estate is vested is in privity with the fiduciary of the estate, and where such privity exists the attorney for the fiduciary is not immune from liability to the vested beneficiary for damages arising from the attorney's negligent performance." *Elam*, at syllabus (*Scholler v. Scholler*, 10 Ohio St.3d 98 (1984), followed; *Simon v. Zipperstein*, 32 Ohio St.3d 74 (1987), distinguished.)

quoting *Black's Law Dictionary* 319 (8th Ed.Rev.2004).  A fiduciary "must refrain from creating situations where his own interests are brought into conflict with those of the trust, and from doing those things which would tend to interfere with the exercise of a wholly disinterested and independent judgment. In accepting a trust, the trustee is presumed to know the obligations and limitations connected with his high office and, if he transgresses, must abide the consequences." *In re Trusteeship of Stone*, 138 Ohio St. 293, 302-03 (1941).

{¶ 34} In addition to the foregoing settled case law firmly establishing that all fiduciaries owe a strict duty of loyalty to their principals, which includes a duty to refrain from self-dealing and avoid conflicts of interest, statutory recognition of such policy is found pursuant to section 2109.44 of the Revised Code, which applies to fiduciaries appointed by and accountable to the probate court, including fiduciaries administering an estate.  Specifically, R.C. 2109.44(A) provides, in pertinent part:

> Fiduciaries shall not buy from or sell to themselves *and shall not have in their individual capacities any dealings with the estate*, *except as expressly authorized by the instrument creating the trust and then only with the approval* of the probate court in each instance.

(Emphasis added).  Thus, R.C. 2109.44 clearly and unequivocally prohibits fiduciaries acting under appointment by the Probate Court from engaging in any self-dealing, including any transactions that would create a conflict of interest.  *See, e.g., In re Estate of Karder*, 5th Dist. No. 2010CA00297, 2011-Ohio-3229 (removal of former estate administrator was not an abuse of discretion under R.C. 2109.24 and 2109.44, based on his self-dealing and lack of candor in the sale of the estate's real property to a straw man who acted on the administrator's behalf); *In re Trust Estate of CNZ,* 9th Dist. No. 06CA008940, 2007-Ohio-2265 (former trustee properly removed pursuant to R.C. 2109.24 because the trustee used some of the trust's funds to make loans to himself and to his construction company contrary to R.C. 2109.43 and 2109.44, creating a conflict of interest).

{¶ 35} With the foregoing authorities in mind, we turn to the facts of this case.  In its judgment entry, the trial court found, in pertinent part,

> At the hearing and in her objection, Ms. Thompson made much ado about the fact that Ms. Nugent had capacity to execute the assignment and that the assignment itself was Ms. Nugent's idea. Neither of those facts are legally relevant. All that matters is that Ms. Thompson, Administrator, *drafted and supplied to*

> *Ms. Nugent, the sole beneficiary, an assignment document that transferred Ms. Nugent's entire interest in the estate to Ms. Thompson, individually. In doing so, **Ms. Thompson did not act for the benefit of Ms. Nugent as Decedent's heir** and **committed a per se violation of her fiduciary duty of loyalty** by **performing an action personally beneficial to herself and detrimental to Ms. Nugent while still serving as administrator.***

(Emphasis added.) (Jgmt. Entry at 6.) We agree with the trial court's assessment and conclusion.

{¶ 36} In this case, it is undisputed that appellant, with the assistance of counsel and while acting as administrator of the Estate, provided to Ms. Nugent the assignment document to execute. It is further undisputed that the assignment would have resulted in Ms. Nugent losing her eligibility for Medicaid benefits. Had appellant and Ms. Nugent not happened to have the conversation with Ethan Ordog—the trustee of the trust established by Ms. Nugent's mother—wherein he advised that if Ms. Nugent assigned her interest in her inheritance, she would lose her Medicaid benefits, Ms. Nugent would have been left without medical insurance. (Tr. at 11.) It is clear from these facts that the assignment was not in the best interests of Ms. Nugent and appellant failed in her fiduciary duty to Ms. Nugent to act in her best interests.

{¶ 37} Furthermore, contrary to appellant's insistence, the fact that the assignment was effectuated at the direction of Ms. Nugent does not change the nature of the transaction—that is, an act of self-dealing clearly proscribed by appellant's fiduciary duty of loyalty and specifically prohibited by R.C. 2109.44. In addition, the fact that eventually appellant filed a revocation of the assignment to undo the wrong done does not negate the initial transgression of permitting Ms. Nugent to assign her interests in the Estate to appellant in the first place. Appellant's position on this point appears to be in essence, "all's well that ends well." But we are not inclined to take so casual a posture.

{¶ 38} Nor do we look favorably upon appellant's position that she and her counsel advised Ms. Nugent to retain her own counsel at some point and that this fact somehow absolved appellant of her own duties toward Ms. Nugent as fiduciary. First, we note as an initial matter that at the hearing, counsel for appellant testified:

> ***once Nancy decided that she needed to revoke that
> [the assignment]***, that she needed to go back on it, Ms.
> Thompson didn't even question it.
>
> In fact, what she did was research some different Pennsylvania
> attorneys and provide attorney names to Ms. Nugent, because
> she agreed that Ms. Nugent should have some legal
> representation ***in addition to asking us to prepare the
> revocation***.

(Emphasis added.) (Tr. at 19.) In other words, no one advised Ms. Nugent she should seek
her own legal advice until *after* the assignment had been executed and *after* the
repercussions of the assignment had been discovered—when appellant and her counsel
were in the process of effectuating the revocation. This is akin to closing the barn door after
the horses have already escaped.

{¶ 39} Moreover, appellant cannot delegate her own fiduciary duties toward Ms.
Nugent in any event. "Executors, administrators, trustees and the like, are charged by law
with non-delegable duties." *Judd v. City Trust & Sav. Bank*, 133 Ohio St. 81, 90 (1937),
citing 18 Ohio Jurisprudence, Section 189, 243; 40 Ohio Jurisprudence, Section 131, 350.
Thus, whether appellant and/or appellant's counsel advised Ms. Nugent to retain her own
attorney at any point is irrelevant to the issue of whether appellant breached her own duties
to Ms. Nugent.[5]

{¶ 40} Finally, appellant's contention that the trial court's judgment impermissibly
creates a new "per se violation" of the fiduciary duty of loyalty which is contrary to law
misapprehends, misstates, and mischaracterizes the finding of the trial court and is at its
core nothing but a straw man argument. It is clear from the trial court's decision that it
simply found that under the facts of this particular case, appellant breached her duty of
loyalty "per se" because she had a conflict of interest and engaged in a prohibited act of self-
dealing under both her common law duty and pursuant to R.C. 2109.44. We have already
discussed above why we agree with the trial court's conclusion and will not repeat ourselves.
Furthermore, contrary to appellant's assertion in her reply brief that "[t]he court imputed

---

[5] We are further somewhat troubled by the testimony of counsel for appellant that, in regard to Ms. Nugent's
status as a Medicaid beneficiary, counsel "did some - - some brief research"; that counsel "are not attorneys
in Pennsylvania * * *"; we "did do some research * * * [and] we believed it was possible it could be done without
hurting her benefits." (Tr. at 20.) Whatever "brief" research was done, it was clearly insufficient for purposes
of the best interests of Ms. Nugent.

this obligation onto Appellant because she was not originally a beneficiary of the estate" (Appellant's Reply Brief at 9-10), the trial court did no such thing. Instead, the trial court clearly stated appellant "committed a per se violation of her fiduciary duty of loyalty by performing an action personally beneficial to herself and detrimental to Ms. Nugent *while still serving as administrator*." In other words, appellant's status as administrator with fiduciary duties to Ms. Nugent is the definitive factor. (Emphasis added.) (Jgmt. Entry at 6.)

{¶ 41} In short, based on the foregoing, the trial court did not err in finding that appellant committed a per se violation of her duty of loyalty in this case. Accordingly, we overrule appellant's second assignment of error.

{¶ 42} Turning to appellant's first assignment of error, she asserts that the trial court erred in removing her as Administrator of the Estate of George W. Nugent. This assignment of error is meritless.

{¶ 43} As stated previously, the standard of review for determining whether appellant was properly removed as administrator of the Estate is abuse of discretion. We have already determined that it was not error on the part of the trial court to find that appellant committed a per se violation of her fiduciary duty of loyalty by engaging in self-dealing and ignoring her clear conflict of interest arising from the assignment to appellant of Ms. Nugent's interests as sole heir. Section 2109.24 of the Revised Code, as discussed above, clearly permits the removal of a fiduciary based on neglect of duty. R.C. 2109.24.

{¶ 44} Therefore, the trial court did not abuse its discretion and thus did not err in removing appellant as Administrator of the Estate of George W. Nugent pursuant to R.C. 2109.24. Accordingly, we overrule appellant's first assignment of error.

## IV. Disposition

{¶ 45} For all the foregoing reasons, we overrule both of appellant's assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

———————————